UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CLASSIC MEDIA, LLC,

        Plaintiff,

VS.

J.G. WENTWORTH, LLC,
KARLIN + PIMSLER, INC.,

        Defendants.

11 Civ. 8394 (LAK)

ECF Case

**FIRST AMENDED COMPLAINT**

JURY TRIAL DEMANDED

## JURISDICTION AND VENUE

1. This action arises under the United States Copyright Copyright Act, 17 U.S.C. §§ 101 et seq. and under the Lanham Act, 15 U.S.C. § 1125. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

2. This Court has personal jurisdiction over the Defendants under New York C.P.L.R. §§ 301, 302(a)(1) by virtue of their transacting, doing, and soliciting business in this District.

3. Venue is proper under 28 U.S.C. § 1391(b) and (c) and 1400(a), as a substantial part of the events and/or omissions that gave rise to Plaintiff's claims occurred in this District, the infringing television commercial aired in this District and one or more Defendants resides and may be found in this District.

31612121

## THE PARTIES

4. Plaintiff Classic Media, LLC (hereinafter referred to as "Classic" or "Plaintiff") is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business at 85 Fifth Avenue, New York, New York.

5. Upon information and belief, Defendant Karlin + Pimsler, Inc. (hereinafter referred to as "Karlin + Pimsler" and, collectively with Defendant J.G. Wentworth, the "Defendants") is a corporation incorporated under the laws of the State of New York with its principal place of business at 1375 Broadway, New York, New York.

6. Upon information and belief, Defendant J.G. Wentworth, LLC (hereinafter referred to as "J.G. Wentworth") is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business at 201 King of Prussia Road, Radnor, Pennsylvania.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

*I.   The* Lassie *Works and Classic's Intellectual Property Rights Therein*

7. The fictional collie dog character known as "Lassie" is one of the most beloved screen and television characters of all time. Lassie was the star of 11 feature films and several television series, most notably the first *Lassie* series (hereinafter "*Lassie*" or the "Series") that originally ran from 1954 until 1973 and which is still in syndication to this date. One of the longest running dramatic series on television, *Lassie* was the recipient of two Emmy Awards, for Best Children's Program (in 1955) and for Best Children's Series (in 1956). The Series received another Emmy nomination in 1960 for Outstanding Achievement in the Field of Children's Programming. The character Lassie has a star on Hollywood's Walk of Fame.

8.  Along with the title character, *Lassie* featured numerous other characters. The show's first ten seasons follow Lassie's adventures in a small farming community. Fictional eleven-year-old Jeff Miller, his mother, and his grandfather are Lassie's first human companions until the Series' fourth season, when Lassie becomes part of the fictional Martin family - Paul, his wife, Ruth, and their seven-year old son, Timmy, who live together with Lassie on their family farm. All characters appearing in or otherwise related to the Series are hereinafter collectively referred to as the "Characters."

9.  In the Series' most famous and memorable recurring storyline, the Characters, particularly Timmy Martin, find themselves in peril. In each instance, one or more of the Characters send Lassie to get help from others. During her search, Lassie is shown running through a field, forest, or other rural area until she finds humans who can save her companions. Lassie is then always shown barking at the humans to get their attention. Sensing that Lassie's barks mean that someone is in trouble, the humans ask Lassie to lead them to the site of peril. Lassie is then shown leading the humans to her companions and their eventual rescue. In 2004, actress June Lockhart, who played the role of Ruth Martin, described the show as "a fairy tale about people on a farm in which the dog solves all the problems in 22 minutes, in time for the last commercial."

10. The Characters from the Series (including, but not limited to, Lassie, Timmy and Ruth), as well as the *Lassie* series itself and its recurring storyline, have become famous and an integral part of American popular culture. *Lassie's* themes explored the relationship between boys and their dogs, with the series helping to shape viewers' understanding of mid-20th Century American boyhood. *Lassie* was associated with the wholesome family values of its period, with Lassie consistently depicted as

31612121

caring, nurturing, and responsible, with a commitment to family and community. Today, *Lassie* continues to evoke viewers' feelings of nostalgia for the bygone era in which it was set.

11. Classic is a global media company with a large portfolio of some of the world's leading family and pop-culture entertainment brands. Classic produces programming content in several genres, including television programming. Classic has interests in several subsidiaries and joint ventures.

12. Classic and/or its predecessors in interest have complied in all respects with Title 17 of the United States Code and all other laws governing copyright, and have secured and maintained the exclusive rights and privileges in and to the Property. As a result, Classic is the exclusive owner and proprietor of copyrights related to the famous fictional collie dog character known as "Lassie" and both motion pictures and television series featuring this character. Plaintiff owns approximately 1,200, of which approximately 1,000 relate specifically to television episodes of the Property. A detailed listing of the specific works at issue in this action, comprising episodes from the Series from approximately 1954 – 1964 and which embody, among other things, most or all of the Characters, the storyline and the other creative elements of the Series described above (collectively, the "Works"), and the applicable copyright registrations for each of the Works, are set forth in Exhibit A, which is attached hereto and incorporated herein by this reference.

13. Over the last several decades, Classic and/or its predecessors in interest have exploited the Series, the Characters, the other expressive elements of the Series (including its familiar storyline), the mark "Lassie" and the other intellectual property

rights that comprise the universe of Lassie-related works (collectively, the "Property") in myriad ways. For example, Classic and/or its predecessors have caused the Property to be distributed via domestic and international television, in pre-recorded videocassettes, videotapes video discs and DVDs. Classic and/or its predecessors have distributed and/or licensed the distribution of fiction books, coloring books, children's activity books, comic books, magazines, party decorations, photo albums, trading cards, greeting cards, stationery, calendar, posters, toys, plush toys, mugs and computer video games – even Christmas ornaments. Classic has engaged in licensing programs for apparel (e.g., t-shirts, hats, sweatshirts) as well as pet-related products (e.g., dietary supplements, medications, and grooming products). Lassie currently "endorses" a popular organic dog food called "Natural Way" that is sold in supermarkets and other stores throughout the United States. In addition, Classic has generated substantial revenues from "personal appearances" of Lassie. Most notably, Lassie for many years was a featured performer at all Universal theme parks. Lassie also appeared on the National Geographic Channel television series "Dog Whisperer With Cesar Millan." Lassie also regularly makes appearances at parades, state fairs and dog shows. In fact, Classic maintains a breeding program in connection with which it has retained a dog trainer to breed and train a constant Lassie performer that is directly related to the original Lassie, both for purposes of scheduling personal appearances for Lassie and in order to produce new entertainment content featuring the Lassie character.

14. Plaintiff has also licensed the Property to third parties for their use of the Characters in television advertisements. The Property is so valuable that Classic has been

31612121

able to collect more than $1 million in licensing fees for the Property's use in just one television commercial.

15. As a consequence of the widespread familiarity of the consuming public with the Series, the Characters and the Property, and the extensive use of the Property in connection with the sale of goods and services as alleged above, the Property is distinctive and a secondary meaning has been created in the minds of the public throughout the United States (if not throughout the world), by which the Property has become strongly identified and associated with Classic and its predecessors. Classic therefore has acquired common law trademark rights in the Property in addition to its copyright ownership of the Works.

## II. *Defendants' Unauthorized Use of the Property*

16. Upon information and belief, Defendant J.G. Wentworth is a financial services company whose primary business is purchasing customers' annuities and structured settlements from in exchange for a lump-sum payment to the customer.

17. Upon further information and belief, J.G. Wentworth holds more than $2 billion in annuities and structured settlements.

18. Upon information and belief, Defendant Karlin + Pimsler is an advertising agency that specializes in creating direct-response television advertisements for its clients.

19. Upon information and belief, Karlin + Pimsler has produced several of these television advertisements for J.G. Wentworth, including the Infringing Advertisement (defined below) that is at issue in this First Amended Complaint.

31612121

20. J.G. Wentworth has promoted its annuity- and structured settlement-buying business with dozens of nationally aired television commercials.

21. J.G. Wentworth has released, or caused to be accessible, its advertisements on its website, www.jgwentworth.com.

22. Karlin + Pimsler has released, or caused to be accessible, the advertisements it has produced for J.G. Wentworth on YouTube.com and its own website, www.karlinpimsler.com.

23. On or about December 28, 2009, Steve Pimsler, Karlin + Pimsler's then Vice President and Creative Director ("Pimsler"), contacted Christine Gorman ("Gorman"), an employee in Classic's licensing department, to discuss licensing the Lassie character for a client of Karlin + Pimsler. Later that same day, Pimsler sent Gorman an email in which Pimsler stated, among other things, that his company was "exploring an idea for a client of ours which would feature on a Lassie [sic]." Pimsler's December 28 email also notes that Pimsler wished to discuss with Gorman "how the rights for using Lassie can be licensed..."

24. Pimsler and Gorman thereafter exchanged emails and spoke over the telephone about licensing the Property for a live-action television commercial. On January 4, 2010, Pimsler sent Gorman an email in which he noted that "[o]ur idea is to set up a situation similar to the Lassie TV show; it would be set in farm house, with a mother and young son. The mother is in financial difficulty and the son sends Lassie to get help. Lassie runs through the hills and meadows and finally brings help in the person of our client's spokesperson."

25. At that time, Pimsler also explained that the advertisement would be used to promote "a reputable financial instrument aimed at consumers." All of the emails Pimsler and Gorman exchanged refer to Lassie in the subject line (e.g., "Lassie licensing" or simply "Lassie"). True and correct copies of the emails referred to above are attached hereto at Exhibit B and incorporated herein by reference.

26. After January 6, 2010, neither Gorman nor anyone else from Classic heard from or was contacted by Pimsler or anyone else from or representing either Karlin + Pimsler or J.G. Wentworth.

27. Upon information and belief, in or about March 2010, J.G. Wentworth caused to be broadcast on television its Lassie-themed commercial alternately titled "Get Cash Now" and "Get Help Girl" (the "Infringing Advertisement").

28. Upon information and belief, soon thereafter, J.G. Wentworth displayed, or caused to be accessible, the Infringing Advertisement on its website. The Infringing Advertisement is no longer available for viewing on J.G. Wentworth's website. At the time of the filing of the original Complaint, the Infringing Advertisement could still be accessed via the Internet Archive's "Wayback Machine" at www.archive.org. On information and belief, however, it appears that the Infringing Advertisement has since been removed from this website.

29. Upon information and belief, soon after being broadcast on television, Karlin + Pimsler displayed, or caused to be accessible, the Infringing Advertisement on its website at www.karlinpimsler.com/pages/financial-services.html. Until approximately mid-January 2012, the Infringing Advertisement was still available for viewing on Karlin + Pimsler's website, as well as on YouTube.com. On information and belief, however, it

31612121

appears that the Karlin + Pimsler removed the Infringing Advertisement from its website after this action was filed, and may have caused the Infringing Advertisement to be removed from YouTube.com, as well.

30. The Infringing Advertisement copies the Characters, the Series' famous storyline, and other expressive elements of the Works. The Infringing Advertisement begins by showing a young boy, similar in age and appearance to the famous Timmy character from *Lassie*, sitting at the table of a 1950s farmhouse-styled kitchen with his middle-aged mother. The mother is dressed in the contemporary fashion of a 1950's housewife and strongly resembles the famous Ruth Miller character from *Lassie*. The mother lets out a sigh of exasperation, causing the boy to ask, "Mom, what's wrong?" The mother replies, "Oh, Eddie, we've got to come up with some money or we'll lose the ranch." After some banter about how the mother's structured-settlement payments are not enough to meet the family's needs, the young boy gets up from the table and approaches the family's collie dog, which is strikingly similar in appearance to Lassie, and says, "We need cash now, girl. Go get help!"

31. Thereafter, the Infringing Advertisement shows the collie dog running through fields and farmland until she reaches the offices of J.G. Wentworth and finds the company's spokesman, who asks, "What is it, girl?" The collie dog then barks at the spokesman who, sensing something is wrong, gets up from his office chair to follow the dog. The spokesman and the collie dog are then shown exiting a black pickup truck in front of the farmhouse. The young boy says to his mother, "She's back. We're gonna get the money now!" – indicating the collie dog has rescued the family by seeking J.G. Wentworth's services.

32. Upon information and belief, J.G. Wentworth hired Karlin + Pimsler to produce the Infringing Advertisement, which Karlin + Pimsler thereafter did produce.

33. On or around June 29, 2011, Classic became aware that J.G. Wentworth had aired the Infringing Advertisement on national television broadcasts.

34. More recently, it came to the attention of Classic that J.G. Wentworth's Chief Marketing Officer gave a presentation during "Response Expo 2010" – an exposition for those in the "direct-response" marketing field. During the presentation, the Chief Marketing Officer displayed PowerPoint slides showing consumer responses to J.G. Wentworth's television advertisements. One such response says, "I saw your new commercial, with the theme of Lassie. It is an attention getter. People will be talking about that one." (A true and correct copy of the quoted PowerPoint slide is attached at Exhibit C and incorporated herein by reference.)

## FIRST CLAIM FOR RELIEF

### (For Copyright Infringement)

35. Classic incorporates herein by reference paragraphs 1 through 34 of this First Amended Complaint as though fully set forth herein.

36. The Infringing Advertisement is copied from and is a derivative work based on the Works.

37. Neither Classic nor any of its agents granted J.G. Wentworth or Karlin + Pimsler permission to copy or create any sort of derivative work based on the Works.

38. Defendants willfully infringed Classic's copyrights in the Work by creating, sanctioning and permitting the Infringing Advertisement to be broadcast to the public.

39. As a result of Defendants' infringing conduct, Classic has sustained damages in the form of lost income and profits, which Classic would have realized from the authorized, licensed use of the Works and/or the Property. Pursuant to 17 U.S.C. § 504(b), Classic therefore is entitled to recover its actual damages and any profits of the Defendants that are attributable to the infringement and which are not taken into account in computing the actual damages.

40. Alternatively, pursuant to 17 U.S.C. § 504(c), Classic is entitled to an award of statutory damages for each of the infringed Works.

41. Defendants' infringement of Classic's copyrights in the Works has caused and, if it continues, will continue to cause irreparable harm to Classic that cannot be fully compensated by money and for which Classic has no adequate remedy at law. Therefore, in addition to monetary damages, Classic is entitled to preliminary and permanent injunctive relief preventing Defendants from continuing to infringe upon the Works.

42. Pursuant to 17 U.S.C. § 505, Classic is also entitled to recover its costs and attorneys' fees, according to proof.

## SECOND CLAIM FOR RELIEF

### (For Violation of Section 43(a) of the Lanham Act)

43. Classic incorporates herein by reference paragraphs 1 through 34 of this First Amended Complaint as though fully set forth herein.

44. By creating, producing, distributing, exhibiting and otherwise exploiting the Infringing Advertisement and/or by authorizing or contributing to the foregoing, Defendants have created, and will continue to create, confusion in the marketplace and have falsely created the impression in the minds of the public that Classic and the

31612121

Property are somehow associated or affiliated with J.G. Wentworth, that Classic is somehow sponsoring or endorsing J.G. Wentworth's products and services and/or that Classic approved or authorized the use of the Property in the Infringing Advertisement. Such conduct violates section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

45.     As a direct and proximate result of Defendants' wrongful conduct, Classic has been damaged in an amount according to proof, and therefore is entitled to recover Defendants' wrongfully obtained profits and three times Classic's actual damages, pursuant to 15 U.S.C. § 1117(a).

46.     Defendants' violation of the Lanham Act has caused and, if it continues, will continue to cause irreparable harm to Classic that cannot be fully compensated by money and for which Classic has no adequate remedy at law. Therefore, in addition to monetary damages, Classic is entitled to preliminary and permanent injunctive relief preventing Defendants from continuing to use the Property on or in connection with any products, goods or services, or the advertising of any products, goods or services..

47.     On information and belief, Defendants engaged in the foregoing conduct knowingly, willfully and oppressively, intending to appropriate Classic's intellectual property for its own benefit and to the detriment of Classic and to the confusion of the public. This constitutes an exceptional case within the meaning of Section 35 of the Lanham Act, 15 U.S.C. § 1117, for which Classic is entitled to recover its attorneys' fees.

### THIRD CLAIM FOR RELIEF

#### (For Common Law Trademark Infringement)

48.     Classic incorporates herein by reference paragraphs 1 through 34 of this First Amended Complaint as though fully set forth herein.

31612121

49. Defendants' actions described above constitute common law trademark infringement in violation of Classic's common law trademark right in the Property, for which Classic is entitled to recover all damages proximately caused thereby, according to proof.

50. Defendants' infringement of Classic's common law trademark rights has caused and, if it continues, will continue to cause irreparable harm to Classic that cannot be fully compensated by money and for which Classic has no adequate remedy at law. Therefore, in addition to monetary damages, Classic is entitled to preliminary and permanent injunctive relief preventing Defendants from continuing to infringe upon Classic's common law trademark rights in the Property.

## FOURTH CLAIM FOR RELIEF

(For Common Law Unfair Competition)

51. Classic incorporates herein by reference paragraphs 1 through 34 of this First Amended Complaint as though fully set forth herein.

52. Defendants' actions described above constitute unfair competition under New York state common law. Defendants' acts have resulted in the "passing off" of Defendants' products and services as somehow related to or associated with, or sponsored or endorsed by, Classic. Classic therefore is entitled to recover all damages proximately caused thereby, according to proof.

53. Defendants' wrongful conduct has caused and, if it continues, will continue to cause irreparable harm to Classic that cannot be fully compensated by money and for which Classic has no adequate remedy at law. Therefore, in addition to monetary damages, Classic is entitled to preliminary and permanent injunctive relief preventing

31612121

Defendants from continuing to engage in the conduct alleged in this First Amended Complaint.

## FIFTH CLAIM FOR RELIEF

**(For Violation of N.Y. Gen Bus. L. § 349 - Deceptive Acts And Practices)**

54. Classic incorporates herein by reference paragraphs 1 through 34 of this First Amended Complaint as though fully set forth herein.

55. By virtue of the conduct alleged in this First Amended Complaint, Defendants have engaged in deceptive acts and practices in violation of New York General Business Law section 349.

56. As a direct and proximate result of Defendants' deceptive acts and practices, Classic has been injured in an amount according to proof.

57. Defendants' wrongful conduct has caused and, if it continues, will continue to cause irreparable harm to Classic that cannot be fully compensated by money and for which Classic has no adequate remedy at law. Therefore, in addition to monetary damages, Classic is entitled to preliminary and permanent injunctive relief preventing Defendants from continuing to engage in the wrongful conduct alleged in this First Amended Complaint.

58. Pursuant to statute, the Court may also award Classic its reasonable attorneys' fees.

## SIXTH CLAIM FOR RELIEF

**(Unjust Enrichment)**

59. Classic incorporates herein by reference paragraphs 1 through 34 of this First Amended Complaint as though fully set forth herein.

31612121

60. By their conduct alleged above, Defendants have unjustly retained a benefit to the detriment of Classic, and such benefit violates fundamental principles of justice, equity and good conscience.

61. Accordingly, Classic is entitled to an order requiring Defendants to disgorge to Classic any and all unjustly-gotten gains.

**WHEREFORE**, Classic prays for judgment as follows:

### On Its First Claim For Relief:

1. For an award of Classic's actual damages and any profits of the Defendants that are attributable to the infringement and which are not taken into account in computing the actual damages;

2. Alternatively, for an award of statutory damages for each of the infringed Works;

3. For an Order preliminarily and permanently enjoining Defendants, their agents, servants and assigns from infringing Classic's copyrights in the Works in any manner including, without limitation, by broadcasting or otherwise exploiting in any manner the Infringing Advertisement;

4. For an award of Classic's attorneys' fees incurred herein;

### On Its Second Claim For Relief:

5. For an award of Defendants' wrongfully obtained profits and three times Classic's actual damages, according to proof;

6. For an Order preliminarily and permanently enjoining Defendants, their agents, servants and assigns from violating the Lanham Act with respect to the Property

15

in any manner including, without limitation, by broadcasting or otherwise exploiting in any manner the Infringing Advertisement;

7. For an award of Classic's attorneys' fees incurred herein;

**On Its Third Claim For Relief:**

8. For an award of Classic's actual damages proximately caused by Defendants' infringement of Classic's common law trademark rights in the Property, according to proof;

9. For an Order preliminarily and permanently enjoining Defendants, their agents, servants and assigns from infringing upon Classic's common law trademark rights in the Property in any manner including, without limitation, by broadcasting or otherwise exploiting in any manner the Infringing Advertisement;

**On Its Fourth Claim For Relief:**

10. For an award of Classic's actual damages proximately caused by Defendants' unfair competition under common law, according to proof;

11. For an Order preliminarily and permanently enjoining Defendants, their agents, servants and assigns from engaging in further acts of unfair competition against Classic with respect to the Property in any manner including, without limitation, by broadcasting or otherwise exploiting in any manner the Infringing Advertisement;

**On Its Fifth Claim For Relief:**

12. For an award of Classic's actual damages proximately caused by Defendants' deceptive acts and practices in violation of New York General Business Law section 349, according to proof;

13. For an Order preliminarily and permanently enjoining Defendants, their agents, servants and assigns from continuing to engage in deceptive acts and practices with respect to the Property in any manner including, without limitation, by broadcasting or otherwise exploiting in any manner the Infringing Advertisement

### On Its Sixth Claim For Relief:

14. For an Order requiring Defendants to disgorge to Classic any and all unjustly-gotten gains by virtue of its use of the Property in the Infringing Advertisement;

### On All Claims For Relief:

15. For recovery of Classic's costs of suit; and

16. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
February 2, 2012

Respectfully submitted,

KATTEN MUCHIN ROSENMAN LLP

Alan R. Friedman (AF 1513)
575 Madison Avenue
New York, New York 10022
(212) 940-8800

- and -

Sonja Keith, Esq. (0055)
c/o Classic Media, LLC
85 Fifth Avenue, 6th Floor
New York, NY 10003
(212) 659-1954

*Attorneys for Plaintiff*
*Classic Media LLC*